UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KATHRYN ELIZABETH TAVARES,

    Plaintiff,

v.                                                         Case No. 8:21-cv-2087-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits (DIB). Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to include her limitations related to vertigo and headaches in the RFC; failing to assess the limitations flowing from her severe anxiety; failing to properly evaluate her subjective symptoms; and failing to pose a hypothetical to the VE that included all of her limitations. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    I.    *Background*

Plaintiff, who was born in 1993, claimed disability beginning April 22, 2018 (Tr. 178). Plaintiff completed two years of online college through Keiser University, earning an AA in medical coding and billing in August 2019 (Tr. 212, 447). Plaintiff's past relevant work experience includes work as a hostess at Longhorn Steakhouse from

November 2014 through April 2018 (Tr. 213).  Plaintiff alleged disability due to blind or low vision; vertigo; and anxiety (Tr. 225).[1]  In describing the effects of her vertigo, Plaintiff stated:

> I know vertigo is not life threatening, but it has left me with no life at all.  I cant [sic] leave my house because of how dizzy I am and it puts a lot of strain on me not being able to work or care for myself. With vertigo comes balance issues and sometimes I lose my balance randomly which can sometimes end up leaving me falling to my knees. My vision is blurry from the dizziness. I had an eye exam and got glasses thinking it would solve at least a little of my problem but my vision still gets taken over by my dizziness.  I'm going on 3 years in November that Ive [sic] been non stop suffering from this.  I cant [sic] work I cant [sic] leave the house I cant [sic] go to stores I can barley [sic] take a car ride to get back and forth to my appointments.  I don't have health insurance to help with doctor bills or prescriptions so I can only go when I'm out of refills even though I should be going every 2 months for updates. I'm only 25 and this disease has made it impossible for me to care for myself.

(Tr. 232).

Given her alleged disability, Plaintiff filed an application for a period of disability and DIB (Tr. 178-179).  The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 78-91, 92-106).  Plaintiff then requested an administrative hearing (Tr.122-123).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 46-77).  Following the

---

[1] The record does not include much evidence relating to Plaintiff's alleged "low vision."  Consultative psychologist Kindelan noted in his evaluation:
   She makes no mention of blurry vision which [the SSA] had referenced in [their] letter of introduction to me regarding Ms. Tavares. When I asked her about any visual problems, she mentioned her vision worsens when her anxiety increases. She was able to read adequately sentences from any Office of Disability Determinations page.
(Tr. 448).

hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 10-23).  In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2025, and had not engaged in substantial gainful activity since April 22, 2018, the alleged onset date (Tr. 12).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: vertigo; headaches; tinnitus; obesity; anxiety; depression; attention deficit hyperactivity disorder (ADHD); obsessive-compulsive disorder; and personality disorder (Tr. 12).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13).  The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; no commercial driving; work environments with noise level 3 as defined by the SCO (Selected Characteristics of Occupations) code or less except incidental; no exposure except incidental to extreme bright lights like stage lights, headlights, and bright inspection lights with normal office and home lights acceptable; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple and detailed tasks while maintaining attention and concentration for two hours at a time before requiring a regularly scheduled break; low stress work defined as occasional decision making and occasional changes in the work setting; and occasional interaction with coworkers, supervisors, and the public.

(Tr. 16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined Plaintiff could not perform her past relevant work (Tr. 21-22). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as price marker; routing clerk; or collator (Tr. 23). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 23). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental

impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a

scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

III.   *Discussion*

Plaintiff argues that the ALJ erred by failing to include her limitations related to vertigo and headaches in the RFC; failing to assess the limitations flowing from her severe anxiety; failing to properly evaluate her subjective symptoms; and failing to pose a hypothetical to the VE that included all of her limitations.

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. RFC

Plaintiff complains that the ALJ's RFC "fails to account for the full extent of the triggers" for her vertigo and dizziness (Doc. 20 at 21). In addition to "no exposure except incidental to extreme bright lights like stage lights, headlights, and bright inspection lights with normal office and home lights acceptable," Plaintiff states the RFC should have also included "a need to avoid fluorescent lights and moving her head" (*Id.*) Relatedly, she asserts that the ALJ erred by failing to incorporate limitations for "being absent, off task, or other restrictions due to the headaches and vertigo" (Doc. 20 at 28). In response, the Commissioner contends that substantial evidence supports the ALJ's RFC that reasonably addressed the limitations resulting from Plaintiff's vertigo and headaches. Additionally, the Commissioner asserts that Plaintiff has failed to cite to any objective evidence supporting her contention that she needs to avoid exposure to fluorescent lights and moving her head in order to avoid headaches and vertigo. To this end, the Commissioner adds that Plaintiff has relied only on her subjective testimony in asserting that her headaches and vertigo cause limitations not already included in the ALJ's RFC.

In her supplemental memorandum of law, Plaintiff cites to medical records that she claims document her symptoms: Dr. Berry noted increased chronic vertigo and recommended medications (Meclizine and if inadequate, Compazine) (Tr. 369); Dr. Shae noted two years' of dizziness and nausea, recommended a CT scan of the brain,

and if negative, recommended Epley maneuvers and an evaluation with a neurologist (Tr. 408-10); Nurse Practitioner Phillips treated complaints of nausea and dizziness "everyday all day," migraine headache, left ear pain, vertigo of central origin, and referred her to a neurologist (Tr. 372-75, 386); neurologist Kassicieh diagnosed chronic vertigo of unclear etiology associated with nausea, other peripheral vertigo, unspecified ear, and other headache syndrome, and tinnitus in both ears, more so on left (Tr. 422, 433-34, 436-38), and noted Plaintiff's reports of spinning dizziness, trouble with her gait, imbalance, nausea with dizziness, headaches, and "[an inability] to work, go to the grocery store, or even drive due to dizziness" (Tr. 420-27, 432-39).

Plaintiff's references to the medical evidence are accurate, and the ALJ considered this evidence in his decision. In particular, the ALJ discussed that in November 2017, Plaintiff visited the emergency room with complaints of sinus congestion and dizziness; and that in December 2017, Plaintiff complained of chronic sinusitis with dizziness and nausea, however neurological exam showed no evidence of benign positional vertigo (Tr. 17-18). The ALJ also discussed that in June 2018 Plaintiff presented with vertigo but denied headaches, hearing loss, tinnitus, nausea, fainting, odor disturbances, and sensory disturbances (Tr. 17-18). The ALJ next discussed neurologist records from July 2018 through July 2019, noting that at her initial neurology consultation, Plaintiff reported dizziness and nausea, with vertigo worse at night when lying down (Tr. 18, Tr. 433). The ALJ noted that Plaintiff admitted abusing caffeine and suffering from caffeine withdrawal headaches (Tr. 18,

Tr. 432).² The ALJ considered neurologist Kassicieh's diagnosis of chronic vertigo of unclear etiology associated with nausea (Tr. 433). And, the ALJ discussed, at a September 2018 follow-up exam, Plaintiff reported nausea with dizziness, but denied headaches; at an April 2019 follow-up exam, Plaintiff reported vertigo, headaches, tinnitus, and more headaches; and at a July 2019 follow-up exam Plaintiff reported prescription medications were helping (Tr. 18). At that visit, Plaintiff reported that Meclizine helped to suppress her vertigo to a degree; Reglan helped to reduce her nausea; and Nortriptyline reduced her headaches to once a week (Tr. 18, Tr. 434-438). Nevertheless, as the ALJ noted, the neurologist's records indicate Plaintiff "states she is not able to work, go to grocery or even drive due to dizziness. Does not have license." (Tr. 18, 432, 436, 438).

As the ALJ discussed, the next time Plaintiff sought treatment was nearly a year later, in June 2020, when she returned to her primary care providers (Tr. 455). On this date, Plaintiff complained of "anxiety x 2 years but is progressing" and "would like to discuss weight gain" (Tr. 455). Nurse practitioner Phillips noted that Prilosec was the only medication Plaintiff was taking, and that Plaintiff reported no head pain, no vision problems, no sinus pain, no tinnitus, no ear pain, no nausea, and no dizziness (Tr. 456). Nurse practitioner Phillips and Dr. Hung Wei-Lee, M.D., who treated Plaintiff on this date, assessed "anxiety" and prescribed Lexapro (Tr. 459).

---

² As the ALJ indicated, Plaintiff reported to Dr. Kindelan that she drinks two Amp energy drinks per day. Dr. Kindelan noted in his evaluation that each Amp drink contains 156 mg of caffeine and 58 grams of sugar (Tr. 19, 448).

As required by the regulations, the ALJ also discussed Plaintiff's debilitating allegations (Tr. 16-21).  In particular, the ALJ discussed that Plaintiff's reported daily activities included preparing meals, cleaning for at least two hours a day, watching horror movies on television, and keeping in touch with friends via social media and texts (Tr. 17, 20, 452, 261).  The ALJ discussed that Plaintiff reported to consultative psychologist Kindelan that she married in 2017, lives with her husband and parents, and visits her brother weekly (Tr. 20).  The ALJ considered that Plaintiff reported that she cares for her dog, cleans her room and bathroom, rides a stationary bike thirty minutes a day, and that she had no difficulties with personal care, preparing meals, cleaning, shopping online, paying bills, or maintaining a bank account (Tr. 20).  The ALJ concluded that "[a]lthough the claimant's impairments certainly caused some limitations, some of the abilities required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. … The medical evidence, and in particular, the clinical and objective evidence contained in imaging and diagnostic testing, treatment notes, physical and mental status examinations, and in the claimant's high level of daily activities do not support limitations of function consistent with a complete inability to perform all work activities." (Tr. 20).

A claimant's RFC is the most work she can do despite any limitations caused by her impairments. 20 C.F.R. § 404.1545(a)(1).  In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence.  20 C.F.R. § 404.1545(a)(2), (e).  An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence.  *McCruter v.  Bowen,* 791 F.2d 1544, 1548

(11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). A claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *See* 20 C.F.R. § 404.1546(c); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor.").

Plaintiff's argument here is, in essence, that there is evidence in the record that *could* support a different RFC determination. Specifically, Plaintiff complains that the RFC should have also included more limitations: a need to avoid fluorescent lights and moving her head, and a limitation for being absent, off task, or other restrictions due to the headaches and vertigo. Even assuming Plaintiff provided ample evidentiary support for these additional limitations, which is debatable, her request is outside of the scope of this Court's review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' . . . .") (alterations in original). Substantial evidence supports the ALJ's RFC determination. Thus, the ALJ's RFC determination should stand.

### B. Mental limitations

Similarly, Plaintiff alleges the ALJ failed to account for certain mental limitations in the RFC related to her agoraphobia, panic disorder, and anxiety. Citing to her testimony and the lay reports that she never leaves her home alone, Plaintiff asserts that the record evidence does not support the ALJ's RFC limiting her to "low stress work defined as occasional decision making and occasional changes in the work setting; and occasional interaction with co-workers, supervisors, and the public" (Tr. 16). Plaintiff claims that since she does not leave her home, even *occasional* interactions are more than she can handle. In response, the Commissioner states that Plaintiff's underlying contention is that the ALJ erred at step two by failing to include two additional severe impairments: agoraphobia and panic disorder. However, because the ALJ identified other severe impairments at step two and advanced through the remainder of the five-step analysis, any omission of additional severe impairments is harmless. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (holding "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two). The Commissioner also states Plaintiff failed to prove that her mental condition, by whatever diagnosis, causes additional work-related limitations not included in the ALJ's RFC. Looking at the record evidence, I agree with the Commissioner for the reasons set forth below.

Based upon a one-time exam on January 17, 2020, consultative psychologist, Kevin M. Kindelan, Ph.D. diagnosed Plaintiff with panic disorder and agoraphobia

and opined that she is unable to sustain work in a competitive work environment (Tr. 445-453). Dr. Kindelan's report states that Plaintiff reported that she suffers from panic attacks and had not ventured out of her house for three years. Plaintiff described that when she left her home, she became lightheaded and had to return inside after five minutes (Tr. 446).

The medical evidence from treating medical sources stands in contrast to psychologist Kindelan's report. None shared Dr. Kindelan's panic disorder and agoraphobia diagnoses. And treatment records from these sources do not include such extreme allegations about being unable to interact with others or an inability to leave her home. Treatment records during the relevant time period reflect unremarkable assessments of Plaintiff's mental condition and appropriate/ within normal limits psychiatric exams (Tr. 350, 409, 369, 373, 375, 415). In fact, the record reflects minimal mental health treatment. Plaintiff has not ever been hospitalized for psychiatric reasons and never received any mental health counseling (Tr. 448). Neurologist Kassicieh's records describe Plaintiff as "not anxious" (Tr. 420, 422, 424, 426). Only two treatment notes discuss anxiety. In March 2017 (over a year *prior* to Plaintiff's alleged onset date), Plaintiff treated with nurse practitioner Phillips for the chief complaint of "unable to hear left ear x 2 days" (Tr. 377). Phillips noted "no anxiety with difficulty breathing, not with chest pain or discomfort, not with rapid heartbeat, not interfering with social activities, no depression," however, she diagnosed eustachian dysfunction and anxiety disorder, prescribed Hydroxyzine HCl as needed for anxiety, and directed Plaintiff to return if no improvement (Tr. 379-380).

Plaintiff did not return to Phillips again until June 2018, over a year later. The treatment note from that date indicates "no anxiety reported" (Tr. 372).

It was not until June 2020 (the most recent medical record in the administrative record) that Plaintiff again reported anxiety (Tr. 459). Even on this date, however, Phillips described Plaintiff's mood as "euthymic," her affect as "normal," and her thought process and content as "not impaired" (Tr. 458). A standardized depression screening revealed no significant symptoms. Phillips prescribed Lexapro, an anti-anxiety medication and diagnosed "anxiety disorder, unspecified" (Tr. 459). No other treatment records reflect treatment for anxiety.

Looking back to the consultative psychologist's report, despite assessing Plaintiff's mood as "sad and anxious" and her affect as "compatible with her mood" (Tr. 450), Dr. Kindelan described Plaintiff as "appropriately dressed and groomed," "at all times pleasant and cooperative" (Tr. 449), with "adequate" judgment and common-sense reasoning skills, "organized" thoughts, and "no evidence of delusional thinking." (Tr. 451). Although Dr. Kinderlan opined that Plaintiff is not able to sustain work, he noted that her activities of daily living included feeding and letting her dog out, cleaning her room and bathroom, riding a stationary bike for 30 minutes, showering 2-4 times a day, cleaning "a lot," spending 30-60 minutes preparing supper for herself and her husband, listening to music and pacing the house for three hours each evening" (Tr. 452-453).

Importantly, despite Plaintiff's request that her interactions with co-workers, supervisors, and the public be restricted to less than occasional, Dr. Kinderlan (the

only mental health source) did not indicate she has any such limitations. Against the record evidence, I find substantial evidence supports the ALJ's RFC finding, including the ALJ's assessment of Plaintiff's mental conditions and limitations.[3]

### C. Subjective symptoms

Plaintiff contends the ALJ placed undue emphasis on objective medical evidence, and erred by failing to give proper weight to her subjective symptoms. In the memorandum, Plaintiff discusses that her daily activities (all performed in the comfort of her private home) are not indicative of an ability to work outside her home; that she has not received mental health treatment due to her lack of health insurance; that her medications for dizziness and nausea were not effective in controlling her symptoms; and that her inability to drive due to dizziness supports her disability claim. In response, the Commissioner asserts that Courts "will not disturb a clearly articulated [subjective complaint] finding supported by substantial evidence." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

Here, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that

---

[3] Plaintiff analogizes her case with a recent Eleventh Circuit case, *Sharpe v. Comm'r of Soc. Sec.*, No. 20-14350, 2022 WL 152229 (11th Cir. Jan. 18, 2022). As the Commissioner notes, *Sharpe* is factually distinguishable. Unlike the Plaintiff in *Sharpe*, Plaintiff's medical sources have not opined that she has significant difficulties interacting with others. *See Sharpe*, 2022 WL 152229, at *3. Despite Plaintiff's subjective reports, based on the record as a whole, the ALJ's assessment of Plaintiff's RFC, including his decision that she is capable of occasionally interacting with co-workers, supervisors, and the public, is supported by substantial evidence.

reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16). As discussed above, the ALJ provided explicit and adequate reasons for discounting the severity of Plaintiff's allegations of disabling symptoms. *See* II(A) and (B). The ALJ, finding Plaintiff's "debilitating allegations … inconsistent with the objective medical record evidence," included in the RFC the limitations he concluded were reasonable in light of Plaintiff's impairments and symptoms (Tr. 16, 18). Thus, upon consideration, this Court concludes that the limitations the ALJ included in the RFC are supported by substantial evidence and that the ALJ did not err in assessing Plaintiff's subjective complaints.

### D. VE hypothetical

Lastly, Plaintiff complains that the ALJ's VE hypothetical failed to comprehensively describe Plaintiff's impairments. Specifically, Plaintiff cites to the VE's statement that "no work could be performed if the individual could not respond appropriately to supervisors 1/3 of the time or missed more than one day of work per month for entry-level workers" (Tr. 71-72). Based on this testimony, Plaintiff asserts that she cannot perform work in the national economy. According to the Commissioner, however, the ALJ's hypothetical was comprehensive, as it included all of the limitations in the ALJ's RFC finding. I agree.

The ALJ must pose an accurate hypothetical to the VE that accounts for all of the claimant's impairments. *Wind v. Barnhart*, 133 F. App'x 684, 694 (11th Cir. 2005);

*Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ's hypothetical must comprehensively describe the claimant's limitations, however it need not include "each and every symptom of the claimant."  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007).  Rather, the ALJ must include only those limitations found credible in the hypothetical, and need not include findings in the hypothetical that the ALJ has properly rejected as unsupported.  *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155. 1161 (11th Cir. 2004).  Thus, here, the ALJ was not required to accept the VE's testimony in response to a hypothetical question that included limitations, such as the need to be absent from work 1/3 of the time and to miss more than one day a month, the ALJ rejected as unsupported.  Upon review, the ALJ's VE hypothetical was proper.  Substantial evidence supports the ALJ's finding that Plaintiff is not disabled and can perform other work in the national economy.

    IV.    *Conclusion*

Accordingly, after consideration, it is hereby

ORDERED:

    1.    The decision of the Commissioner is affirmed.

    2.    The Clerk is directed to enter final judgment in favor of the

Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 21st day of September, 2022.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


cc:     Counsel of Record